IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GERALD HACKETT,

                    Petitioner,

              v.

J. SOTO,[1] Warden, California State Prison, Lancaster,

                   Respondent.

No. 2:13-cv-0528-JKS

MEMORANDUM DECISION

Gerald Hackett, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Hackett is currently in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at California State Prison, Los Angeles County, in Lancaster, California. Respondent has answered, and Hackett has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

A jury convicted Hackett of committing four assaults with a firearm against Paul Ma'ae, Douglas Ducart, Eric James, and Inga Lopes. The jury also convicted Hackett of being a convicted felon in possession of a firearm and found true the allegations that Hackett personally used a firearm in the assaults against the four victims.

---

[1]     J. Soto, Warden, California State Prison, Lancaster, is substituted for L.S. McEwen. Fed. R. Civ. P. 25(c).

The trial court found that Hackett had six prior felony convictions, three of which were strikes within the meaning of California Penal Code §§ 667(b)-(i) & 1170.12.  The trial court also found that Hackett failed to prove he was not guilty by reason of insanity.

Through counsel, Hackett directly appealed, arguing that: 1) the prosecution engaged in group bias by using two peremptory challenges in a racially discriminatory manner; 2) the trial court violated his confrontation rights when accepting the parties' stipulation to the admission of psychological reports into evidence during the sanity phase of trial; and 3) insufficient evidence supported the trial court's finding that he had three prior serious felony convictions.  The Court of Appeal denied Hackett relief on all claims in a reasoned opinion.

Through counsel, Hackett raised these same claims in his petition for review filed with the California Supreme Court.  The court summarily denied the petition.

Hackett filed a *pro se* petition for writ of habeas corpus with the Sacramento County Superior Court, arguing that trial counsel was ineffective for "failing to object when [Hackett] was not afforded the right to waive his right to confrontation . . . [and] that counsel was ineffective in failing to move for a mistrial in response to the use of the psychology [sic] reports without [a] confrontation waiver."  The superior court denied Hackett relief in a reasoned opinion.

Hackett timely filed his Petition for Writ of Habeas Corpus with this Court on March 18, 2013.

## II. GROUNDS RAISED

Hackett argues that: 1) the prosecution engaged in group bias by using two peremptory challenges in a racially discriminatory manner; 2) the trial court violated his confrontation rights

when accepting the parties' stipulation to the admission of psychological reports into evidence during the sanity phase of trial; and 3) there was insufficient evidence to support the trial court's finding that he had three prior serious felony convictions.

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is "contrary" to federal law "if the state court applies a rule that contradicts the governing law set forth" in controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision," *Williams*, 529 U.S. at 412, and not circuit precedent, *see Renico v. Lett*, 559 U.S. 766, 778-79 (2010). The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds and not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are

lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"  *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards in habeas review, this Court reviews this "last reasoned decision" by the state court.  *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Claim One: *Batson* claims

Hackett, who is African-American, first argues that the prosecution engaged in group bias by using peremptory challenges against two African-American potential jurors in a racially discriminatory manner.

The Court of Appeal rejected this claim on direct appeal, summarizing the facts and concluding as follows:

### I
#### *Peremptory Challenges*

Defendant contends the trial court erroneously denied his *Batson /Wheeler*[2] motions after the People engaged in group bias by using peremptory challenges to excuse two African-Americans from the jury.  We are not persuaded.

FN. 2: *Batson v. Kentucky* [, 476 U.S. 79 (1986)]; *People v. Wheeler* [, 583 P.2d 748, 22 Cal. 3d 258 (Cal. 1978)].

### A.
#### *Jury Selection*
#### *Prospective Juror: N.*

The court excused the first prospective African-American juror based on a claim of hardship.  The next prospective African-American juror, N., was called to the jury box

-4-

after the first round of peremptory challenges had been made.  The court asked N. about his involvement in a domestic violence incident.  N. explained that he was arrested in 2005 after a dispute with his girlfriend. Although he spent two days in jail, he never was charged.  N. stated he was initially upset with the officers because they had not also arrested his girlfriend.  Nonetheless, he did not believe the incident would affect his evaluation of testimony by police officers.

During the next round of peremptory challenges, the prosecutor excused N. Defense counsel made a *Wheeler* motion.[3]  Without requiring a prima facie showing of race discrimination, the trial court asked the People to respond.  The prosecutor stated: "As to [N., he] is an African-American gentleman for the record.  [¶]  He indicated that he, himself, was arrested for a domestic violence issue back in 2005 and that had been between himself and his girlfriend.  [¶]  He indicated that he did not think that it was fair and that he was arrested and that his girlfriend was not also arrested in that case.  [¶]  He indicated that no charges were filed. However, he did say that he did think he was not happy with law enforcement at the time of the arrest.  [¶]  But then thereafter since charges weren't filed he still thinks that he would be able to be fair with law enforcement.  [¶]  But given that experience of domestic violence is typically a crime of violence against another person that they're close to and that he had that unfortunate experience with law enforcement, I would be excusing him for that purpose."

> FN. 3: Although defendant cited only *Wheeler* in making his motion, this "sufficed to preserve his *Batson* claim for appeal."  (*People v. Vines* [, 251 P.3d 943,  958 n.7 (Cal. 2011)].

Defense counsel replied, "We didn't have real access to his questionnaire because we couldn't read it, so we used the Court's copy.  [¶]  I think he sufficiently qualified his answer that everything related to that domestic violence.  [¶]  Any dissatisfaction he felt with the police was at that time back then.  Now he says he could be a fair, impartial juror.  [¶]  I thought he was articulate.  I—his answers were clear and concise. Everything related to the arrest back at that time, and I think he would be—could be a fair impartial juror now.  I don't think anything he said will rise to a reason to strike him. [¶]  He is an African American gentleman.  My client is an African American gentleman. They come from the same cognizable class of individuals, African American heritage from my view.  And I would ask the Court to take Court recognition of that."

The prosecutor responded:  "I also state that there is domestic violence history in the defendant's past.  That is one of the priors that if the defendant were to testify, I would be impeaching him with.  [¶]  And it is one of his prior convictions that I would intend to bring out through Dr. Nakagawa in relation to her testimony and considering what she considered in making her determination about mental illness suffered by the defendant.  In fact, that he has a prior history of violence.  That is something she should have considered.  That maybe she was more dismissive with.  [¶]  It's the same type of crime that [N.] had been arrested for.  [¶]  I also think that there are kind of—this case deals with issues of control and domination by the defendant.  I think those are also

issues that go along with domestic violence as well.  [¶]  So that's another reason I would be dismissing [N.] because of his personal experience with those."

The trial court denied the defense's motion and found the People's stated reasons for exercising a peremptory challenge against N. to be credible.

*Prospective Juror: G.*

The court then questioned another African-American juror, G., about two answers on his questionnaire form.  G. had stated that he was serving as a grand juror and that he was under a court-appointed conservatorship.  G. quickly admitted that neither answer was correct.

The prosecutor used a peremptory challenge to excuse G.  Defense counsel again moved for a mistrial under *Wheeler*.  The defense asserted that G. was a "person of color" and "appears to be [a] person of African American descent."  The trial court again asked the prosecutor to respond without requiring the defense to make a prima facie showing of group bias.

The prosecutor explained, "On the first day he had requested a hardship in relation to this case and indicated—indicating he's working two jobs, that he did not believe he got paid for both jobs.  I believe he did confirm that he did get paid for Costco Wholesale.  [¶]  And then in relation to the other job, I can't recall what he said, but given the fact that he had requested a hardship that he's working two jobs.  [¶]  I didn't believe that he was particularly articulate when we were speaking with him during the hardship time.  [¶]  When we did receive his jury forms, he did mark off two boxes of the jury form saying that he was serving as a grand juror and saying that he was under an appointed conservatorship, either showing that he really wasn't paying much attention when completing out the form, or if he had some confusion with completing out the form and what the terms are.  [¶]  I just think that he wasn't very much—putting much effort into being a juror in this case.  That he doesn't necessarily want to serve as a juror.  [¶]  And just given observations of him, I would prefer to not have him sit on this jury, especially when I think there are going to be some difficult issues that they're going to need to pay attention to, specific details in this case with certain legal issues of the mental defense and so forth.  [¶]  And I think, from what we've seen, that he hasn't been paying that close attention."

Defense counsel replied that "anybody could make a mistake" on the form and noted that G. had qualified his answer when questioned by the court.  The defense asserted that removing a person of color because he asked for a hardship would "undermin[e] . . . this process."[4]

FN. 4: We note that the defense had earlier made comments that supported the hardship request of another African-American juror.  In that instance, defense counsel noted that the prospective juror suffered health problems in addition to the loss of income that rendered jury service a hardship.  The defense also used a peremptory challenge to excuse an African-American juror.

The trial court denied the *Wheeler* motion made in response to the dismissal of G., finding that the People articulated credible, race-neutral reasons for excusing G. from the jury.

After two days of voir dire, the trial court empanelled a jury that included two African-American, [one] Hispanic, [one] Filipino, and two Asian jurors.

B.
*Comparison Jurors*

Pertinent to the resolution of defendant's contentions are the answers given by five jurors who actually served on the jury, specifically jurors 2, 4, 6, 10, and 11.

*Juror 2*

Juror 2 expressed a concern that "on a subconscious level" he might not be unbiased. However, he stated that he would do his best to evaluate a witness's credibility based on the trial and not on his own prior experiences. Juror 2 acknowledged having a close, 10-year friendship with a sheriff, but stated he had no problem in evaluating a witness's credibility whether or not he or she was a peace officer.

Juror 2 had a positive experience with law enforcement when his spouse was a victim of a home invasion robbery. Juror 2 had a brother and a brother-in-law who had been charged with crimes. Juror 2 noted that his brother had been arrested several times in the past and was treated fairly by the criminal justice system.

*Juror 4*

Juror 4's spouse had been a victim in "a situation" but was not injured. Someone was arrested but not charged for the unidentified offense. The arrested person, however, was charged in an unrelated case with armed robbery. Juror 4 was satisfied with the outcome of both cases. Juror 4's spouse had previously interacted with the prosecutor's office, but the juror himself did not attend any of the related court hearings.

*Juror 6*

Juror 6's spouse of 19 years is a retired San Jose Police officer who had handled cases similar to this case. Juror 6 expressed no problem with evaluating credibility irrespective of the witness's vocation. Juror 6's son had been arrested for driving while intoxicated but nothing about the situation undermined her ability to be fair.

*Juror 10*

Juror 10 had been involved in a "wet reckless" driving incident and was treated fairly by law enforcement. This juror had no concerns "at all" about how peace officers had handled the incident.

*Juror 11*

Juror 11's uncle was shot on a bus in Oakland, but no one was prosecuted for the offense. Juror 11's cousin was shot and killed by the cousin's boyfriend. The juror believed that her cousin's boyfriend should have been convicted of murder and received a longer sentence than that imposed. Nonetheless, Juror 11 recognized that her cousin's case was different from the current case. Juror 11 had also been the victim of a hit and run. Initially, she was not comfortable sitting on the present case. Juror 11 asked for private voir dire to explain that she was not comfortable responding to questions while her spouse's ex-wife was a prospective juror on the same jury panel. However, she ultimately stated that it was the right thing to do and that she would do her best to be fair.

C.

*Basic Principles*

"'The use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16 of the California Constitution (*People v. Wheeler,* [22 Cal. 3d at 276-77]) as well as the equal protection clause of the Fourteenth Amendment to the United States Constitution (*Batson v. Kentucky,* [476 U.S. at 89]).'" (*People v. Ward* [, 114 P.3d 717, 726 (Cal. 2005)]).

In determining whether to grant a *Batson /Wheeler* motion, the trial court must employ a three-part test. "First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge based on race. Second, if the showing is made, the burden shifts to the prosecutor to demonstrate that the challenges were exercised for a race-neutral reason. Third, the [trial] court determines whether the defendant has proven purposeful discrimination. The ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." (*People v. Lenix* [, 187 P.3d 946, 953-94 (Cal. 2008)]; *People v. Mills* [, 226 P.3d 276, 294 (Cal. 2010)]).

"The proper focus of a *Batson/Wheeler* inquiry, of course, is on the subjective *genuineness* of the race-neutral reasons given for the peremptory challenge, *not* on the objective *reasonableness* of those reasons. [Citation.] So, for example, if a prosecutor believes a prospective juror with long, unkempt hair, a mustache, and a beard would not make a good juror in the case, a peremptory challenge to the prospective juror, sincerely exercised on that basis, will constitute an entirely valid and *nondiscriminatory* reason for exercising the challenge. [Citation.] It matters not that another prosecutor would have chosen to leave the prospective juror on the jury. Nor does it matter that the prosecutor, by peremptorily excusing men with long unkempt hair and facial hair on the basis that they are specifically biased against him or against the People's case or witnesses, may be passing over any number of conscientious and fully qualified potential jurors. All that matters is that the prosecutor's reason for exercising the peremptory challenge is sincere and legitimate, legitimate in the sense of being nondiscriminatory. '[A] "legitimate

-8-

reason" is not a reason that makes sense, but a reason that does not deny equal protection. [Citations.]'" (*People v. Reynoso* [, 74 P.3d 852, 860 (Cal. 2003)]).

We review a trial court's ruling on a motion for mistrial based on group bias in the exercise of a peremptory challenge under the substantial evidence standard. (*Ward*, [114 P.3d at 726]). Thus, we assess the propriety of "'a trial court's determination regarding the sufficiency of a prosecutor's justifications for exercising peremptory challenges "'with great restraint.'" [Citation.] We presume that a prosecutor uses peremptory challenges in a constitutional manner and give great deference to the trial court's ability to distinguish bona fide reasons from sham excuses. [Citation.] So long as the trial court makes a sincere and reasoned effort to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to deference on appeal. [Citation.]' [Citation.] '[I]n fulfilling [this] obligation, the trial court is not required to make specific or detailed comments for the record to justify every instance in which a prosecutor's [nondiscriminatory] reason for exercising a peremptory challenge is being accepted by the court as genuine. This is particularly true where the prosecutor's [nondiscriminatory] reason for exercising a peremptory challenge is based on the prospective juror's demeanor, or similar intangible factors, while in the courtroom.' [Citation.]" (*Id.* at p. 726.)

## D.
### *The People's Explanations for the Peremptory Challenges*

Here, the trial court did not require the defense to make prima facie showings of discriminatory use of peremptory challenges by the People. Thus, we proceed to consider whether substantial evidence supports the trial court's finding that the prosecutor's stated reasons for excusing N. and G. were race neutral. (*Lenix*, [187 P.3d at 954 n.8]).

As to N., the record shows that he was still angry that he had been arrested in 2005 for a domestic violence incident when his girlfriend was not also arrested. "A prospective juror's negative experience with the criminal justice system, including arrest, is a legitimate, race-neutral reason for excusing the juror." (*People v. Cowan* [, 236 P.3d 1074, 1114 (Cal. 2010)]). The record also supports the People's race-neutral concern that N. had been involved in a domestic violence situation. The prosecutor intended to introduce defendant's domestic violence record to impeach him and in cross-examining his mental health expert.

The record also supports the prosecutor's concern that G.'s answers on his jury questionnaire were inaccurate. The prosecutor further noted that G. wanted to be excused from the jury by claiming he would not get paid during jury service. The prosecutor concluded, based on the request for hardship excuse and inattention to the jury questionnaire, that the juror wanted to be excused. The People's concern about this prospective juror's inaccuracy in answering questions on his jury questionnaire was race neutral. And, G.'s own request to be excused for hardship was consistent with a race-neutral concern that he simply did not wish to serve on the jury. (*See Lenix*, [187 P.3d at 954]).

-9-

Defendant claims that a comparative juror analysis shows the prosecutor's reasons for excusing the two prospective African-American jurors were "unsupported by the record" and "inherently implausible." Defendant asserts that jurors 4, 6, 10, and 11, all had negative experiences with the criminal justice system, as did N., but were not challenged for such reason.[5] We are not persuaded.

> FN. 5: Defendant does not explain how the comparative juror analysis applies to G.

Defendant did not engage in a comparative juror analysis at trial. Even so, "comparative juror analysis must be considered" for the first time on appeal if the defendant relies on such evidence and "the record is adequate to permit the urged comparisons." (*Lenix*, [187 P.3d at 961]). However, as our Supreme Court has cautioned, "comparative juror analysis on a cold appellate record has inherent limitations" due to the fact that, "[o]n appellate review, a voir dire answer sits on a page of transcript. In the trial court, however, advocates and trial judges watch and listen as the answer is delivered. Myriad subtle nuances may shape it, including attitude, attention, interest, body language, facial expression and eye contact." ([*Id.*]). Additionally, we note that because defendant has waited until appeal to advance a comparative juror analysis, "such evidence will be considered in view of the deference accorded the trial court's ultimate finding of no discriminatory intent." (*Id.* at [962 (citing *Hernandez v. New York*, 500 U.S. 352, 365 (1991)]).

Unlike N., none of the comparison jurors were arrested for personal involvement in domestic violence or stated that they had prior negative experiences with law enforcement. Moreover, defendant has not identified the race of the comparison jurors.[6] Thus, defendant has not met his burden of establishing that the trial court erred in finding the prosecutor's reasons for excusing N. to be race-neutral.

> FN. 6: Significantly we note that one of the comparison jurors, juror 11, is African-American.

Defendant asserts that the prosecutor only questioned the jurors as a group, asking N. and G. no follow-up questions. Desultory voir dire by a prosecutor before exercising a peremptory challenge to a prospective juror "may contribute to a suspicion that this juror was removed on the basis of race. This suspicion, along with other factors, may lead to an inference of intentional discrimination." (*U.S. v. Esparza-Gonzalez* [, 422 F.3d 897, 905 (9th Cir. 2005)]). However, in this case, the trial court conducted most of the voir dire and used jury questionnaires. The prosecutor voir dired the jury as did defendant's attorney. The information elicited showed race-neutral reasons for excusing both prospective African-American jurors. The lack of questioning by the prosecutor does not establish group bias.

Finally, we note that defendant's jury did include two African-Americans. "'While the fact that the jury included members of a group allegedly discriminated against is not conclusive, it is an indication of good faith in exercising peremptories, and

an appropriate factor for the trial judge to consider in ruling on a *Wheeler* objection.'
[Citation.]" (*Ward*, [114 P.3d at 728]).

  We find no error in the trial court's denial of defense counsel's *Batson/Wheeler*
motions.

*People v. Hackett*, No. C064509, 2012 WL 884374, at *2-7 (Cal. Ct. App. Mar. 15, 2012).

  The Equal Protection Clause prohibits purposeful racial discrimination in the selection of

a jury. *Batson v. Kentucky*, 476 U.S. 79, 86 (1986).   In *Batson*, the Supreme Court outlined a

three-step process for evaluating a claim that a prosecutor used a peremptory challenge in a

manner violating the Equal Protection Clause: 1) a defendant raising a *Batson* claim must

establish a *prima facie* case of discrimination; 2) once a *prima facie* case of discrimination is

established, the burden of offering race-neutral reasons for the strike shifts to the prosecutor; 3)

after the prosecutor offers race-neutral reasons, the trial court has the duty to determine if the

defendant has established purposeful discrimination.  *Paulino v. Harrison*, 542 F.3d 692, 699

(9th Cir. 2008) (citing *Batson*, 476 U.S. at 98).   "[T]he ultimate burden of persuasion regarding

racial motivation rests with, and never shifts from, the opponent of the strike."  *Purkett v. Elem*,

514 U.S. 765, 768 (1995).

  The Court of Appeal applied the correct standard in analyzing Hackett's claims.  This

Court assumes, as the Court of Appeal did, that Hackett raised a *prima facie* case of

discrimination where the trial court did not require such a showing and instead began with step

two of the *Batson* analysis.  *See Hernandez*, 500 U.S. 352 at 359 (plurality opinion) ("Once a

prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial

court has ruled on the ultimate question of intentional discrimination, the preliminary issue of

whether the defendant had made a *prima facie* showing becomes moot.").

Regarding step two of the *Batson* analysis, a race-neutral explanation "means an explanation based on something other than the race of the juror.  At this step of the inquiry, the issue is the facial validity of the prosecution's explanation.  Unless a discriminatory intent is inherent in the prosecution's explanation, the reason offered will be deemed race neutral."  *Id*. at 360.  The prosecution sought to dismiss Juror N., who was African-American, on the ground that he had previously been arrested for domestic violence stemming from an incident with his girlfriend and that he was not pleased with law enforcement.  A juror's perceived problems with the criminal justice system is a legitimate ground for seeking to strike a juror.  *See Cook v. LaMarque*, 593 F.3d 810, 818-19 (9th Cir. 2010).  The prosecution additionally stated that Hackett's case dealt with issues of "control and domination," which it believed went hand-in-hand with domestic violence.  The prosecution added that it intended to impeach Hackett with a prior domestic assault conviction if he testified and also to examine a medical witness who would be testifying regarding issues of Hackett's mental health about his prior history of violence.

Juror G., who also appeared to be African-American, had asked to be relieved due to hardship and also misrepresented on his questionnaire that he was serving on a grand jury and was under a court-appointed conservatorship.  The prosecution believed that Juror G. was either confused or inattentive and might not be an ideal juror where there would be "difficult" issues presented at trial, or that Juror G. simply did not want to serve as a juror.  "Lack of attentiveness is a neutral, reasonable use for a peremptory challenge."  *United States v. Lorenzo*, 995 F.2d 1448, 1454 (9th Cir. 1993).  Additionally, lack of candor in responding to a juror questionnaire may indicate a race-neutral justification for a peremptory strike.  *LaMarque*, 593 F.3d at 823.

The Court of Appeal was not unreasonable in concluding that the reasons offered by the prosecution, which did not rest on either the intention to exclude African-Americans or stereotypical assumptions about African-Americans, were race neutral.  *See Hernandez*, 500 U.S. at 361.

Nor did the Court of Appeal unreasonably apply the third step of the *Batson* analysis. Unlike Juror N., none of the comparison jurors had been arrested for personal involvement in domestic violence or claimed to have prior negative experiences with law enforcement.  Unlike Juror G., there is no indication that any of the comparison jurors were inattentive and/or lacked candor on their juror questionnaires.  Although two African-Americans were stricken by the prosecution, defense counsel also struck one African-American venireman, and two members of the jury were African-American.  Hackett additionally argues that the prosecution's desultory voir dire indicated that it was removing Juror G. and N. for raced-based reasons.  As noted by the Court of Appeal, desultory voir dire of a juror "may contribute to a suspicion that this juror was removed on the basis of race.  This suspicion, along with other factors, may lead to an inference of intentional discrimination." *Hackett*, 2012 WL 884374, at *7 (quoting *Esparza-Gonzalez*, 422 F.3d at 905).  Here, however, the trial court conducted most of the voir dire and used jury questionnaires.  The Court of Appeal's conclusion that Hackett failed to establish purposeful discrimination was not unreasonable or contrary to established federal law, and Hackett is not entitled to relief on this claim.

Claim Two: Confrontation Clause

Hackett next argues that the trial court erred in admitting psychological reports into

evidence pursuant to the parties' stipulation without obtaining Hackett's personal waiver of his

right to confrontation.

The Court of Appeal rejected this claim on direct appeal as follows:

> Defendant contends his confrontation rights were violated at the sanity phase
> because he was denied the opportunity to confront the psychologists whose reports were
> submitted to the court.  In so arguing, defendant does not assert that he received
> ineffective assistance of counsel.  We conclude that defendant has waived this issue.
>     As this court has previously explained, "The confrontation right is not absolute.
> (*People v. Johnson* [, 114 Cal. Rptr. 545, 39 Cal. App. 3d 749, 754 (Cal. Ct. App. 1974))
> . . . 'A waiver of the right of confrontation can take various forms.  In some instances, an
> accused may voluntarily consent to forego his right of confrontation. . . . By stipulating to
> the admission of evidence, the defendant waives the right to confront the source of the
> evidence.  *United States v. Martin,* 489 F.2d 674, 678 (9th Cir. 1973) *cert. denied*, 417
> U.S. 948, 41 L. Ed. 2d 668 (1974); *see Williams v. Oklahoma,* 358 U.S. 576, 584, 3 L.
> Ed. 2d 516 (1959); *Diaz v. United States,* 223 U.S. 442, 451, 56 L. Ed. 500 (1912)."
> (*Herbert v. Superior Court* [, 172 Cal. Rptr. 850, 117 Cal. App. 3d 661, 667-68 (Cal. Ct.
> App. 1981) (1981)]).  Similarly, our high court has noted, "[e]videntiary stipulations have
> long been recognized as tactical trial decisions which counsel has discretion to make
> without the express authority of the client. [Citations.] Counsel's authority to stipulate to
> evidentiary facts exists in criminal as well as civil cases."  (*People v. Adams* [, 862 P.2d
> 831, 6 Cal. 4th 570, 578 (Cal. 1993)]).
>     In this case, the parties stipulated that the trial court could consider all three
> psychologists' reports, all the guilt phase evidence, and Dr. Nakagawa's testimony at an
> Evidence Code section 402 hearing.
>     The defense had the prerogative to stipulate to the court's consideration of three
> psychologists' reports during the sanity phase of trial.  (*Adams*, [6 Cal. 4th at 578]).
> Based on the stipulation, the trial court did not violate defendant's confrontation rights
> when it considered the proffered reports.  (*Ibid.*)

*Hackett*, 2012 WL 884374, at *7.

The Court of Appeal's conclusion that the trial court did not violate Hackett's

confrontation rights when it considered the proffered reports is not contrary to or an

unreasonable application of federal law.  "The test regarding the validity of a stipulation is

voluntariness." *United States v. Zepeda*, __F.3d__, 2013 WL 5273093, at *3 (9th Cir. Sept. 19, 2013) (quoting *United States v. Molina*, 596 F.3d 1166, 1168-69 (9th Cir. 2010)).  Stipulations "freely and voluntarily entered into in criminal trials are as binding and enforceable as those entered into in civil actions." *Molina*, 596 F.3d at 1169 (citation omitted).  "A defendant who has stipulated to the admission of evidence cannot later complain about its admissibility unless he can show that the stipulation was involuntary." *Zepeda*, 2013 WL 5273093, at *3.  Hackett points to no record evidence that the stipulation was entered into involuntarily.  Rather, he argues that he did not personally waive his right to confrontation.  However, the Ninth Circuit has held that although the right to cross-examine and confront prosecution witnesses "is an essential ingredient of a fair trial," the waiver of this right by stipulation need not be made by the accused personally rather than his counsel. *Wilson v. Gray*, 345 F.2d 282, 286 (9th Cir. 1965).  "It has been consistently held that the accused may waive his right to cross examination and confrontation and that the waiver of this right may be accomplished by the accused's counsel as a matter of trial tactics or strategy." *Id.*  Hackett is therefore not entitled to relief on this claim.

Claim Three: Sufficiency of evidence to support prior convictions

Hackett lastly argues that the evidence was insufficient to support a finding that his prior convictions amounted to "serious felonies," thus qualifying him for sentencing enhancement under California's Three Strikes sentencing law.  Hackett essentially argues that his prior convictions did not amount to serious felonies under state law.

The Court of Appeal denied Hackett relief on this claim, concluding as follows:

### III
### *Sufficiency of the Evidence for Three of Defendant's Five Prior Serious Felony Convictions*

Defendant contends insufficient evidence supports the trial court's finding that he had three prior strikes for (1) a 1979 conviction for assault with a deadly weapon, (2) a 1993 conviction for spousal abuse, and (3) a 1993 conviction for assault with a deadly weapon. We reject the contentions.

### A.
### *Proof of Prior Serious Felony Convictions*

Our high court examined the People's burden of proof to establish a defendant's prior convictions in *People v. Delgado* [, 183 P.3d 1226, 1230-32 (Cal. 2008)]. In pertinent part, the *Delgado* court explained, "The People must prove each element of an alleged sentence enhancement beyond reasonable doubt. [Citation.] Where . . . the mere fact that a prior conviction occurred under a specified statute does not prove the serious felony allegation, otherwise admissible evidence from the entire record of the conviction may be examined to resolve the issue. [Citations.]

"A common means of proving the fact and nature of a prior conviction is to introduce certified documents from the record of the prior court proceeding and commitment to prison, including the abstract of judgment describing the prior offense. [Citations.]

"'[The] trier of fact is entitled to draw reasonable inferences from certified records offered to prove a defendant suffered a prior conviction. . . .' [Citations.] '[O]fficial government records clearly describing a prior conviction presumptively establish that the conviction in fact occurred, assuming those records meet the threshold requirements of admissibility. [Citation.] Some evidence must rebut this presumption before the authenticity, accuracy, or sufficiency of the prior conviction records can be called into question.' [Citation.]

"Thus, if the prosecutor presents, by such records, prima facie evidence of a prior conviction that satisfies the elements of the recidivist enhancement at issue, and if there is no contrary evidence, the fact finder, utilizing the official duty presumption, may determine that a qualifying conviction occurred. [Citation.]

"However, if the prior conviction was for an offense that can be committed in multiple ways, and the record of the conviction does not disclose how the offense was committed, a court must presume the conviction was for the least serious form of the offense. [Citations.] In such a case, if the statute under which the prior conviction occurred could be violated in a way that does not qualify for the alleged enhancement, the evidence is thus insufficient, and the People have failed in their burden. [Citations.]

"On review, we examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence. In other words, we determine

whether a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement beyond a reasonable doubt. [Citations.]" (*Delgado* [, 183 P.3d at 1230-32]).

B.

*1979 Assault with a Deadly Weapon*

The People introduced a packet of certified documents from the 1979 case in which defendant was convicted of assault with a deadly weapon (§ 245, subd. (a)(1)).  A minute order shows that defendant pleaded guilty to assault with a deadly weapon (a knife) and by means of force likely to produce great bodily injury in exchange for dismissal of other charges and a promise of no state prison at the outset.  Defendant later waived the promise of no state prison.  As part of the plea agreement, the sentencing court struck the enhancements for use of a deadly weapon and use of force likely to result in great bodily injury when it imposed a state prison term of two years.

In the present case, the trial court concluded that the People had established the conviction as a serious felony.  Defendant argues that there were no facts showing the assault to be a serious felony because the enhancements for knife use (§ 12022, subd. (b)) and infliction of great bodily injury (§ 12022.7) were stricken by the original sentencing court. We disagree.

Defendant's prior offense—assault with a deadly weapon—is listed as a serious felony (§ 1192.7, subd. (c)(31)) and does not depend on additional allegations of personal infliction of great bodily injury or use of a deadly weapon (§ 1192.7, subd. (c)(8), (23)).

We also reject defendant's reliance on *People v. Bueno* [, 50 Cal. Rptr. 3d 161 (Cal. Ct. App. 2006)] and *People v. Thoma* [, 58 Cal. App. 4th 1096 (Cal. Ct. App. 2007)].  Neither case provides him with support.

In *Bueno*, . . .  the Court of Appeal considered whether a conviction for battery with serious bodily injury (§ 243, subd. (d)) was a strike prior.  Battery with serious bodily injury is not a strike unless the defendant personally inflicts great bodily injury or personally uses a deadly or dangerous weapon or firearm.  (§ 1192.7, subd. (c)(8), (23).) In *Bueno*, the defendant did not admit the allegations that would have rendered the offense a serious felony.  Thus, the appellate court reversed the trial court's finding of a prior strike. (*Bueno* [, 50 Cal. Rptr. at 163-65]).  By contrast, defendant in this case admitted the commission of an offense—assault with a deadly weapon—that necessarily constitutes a serious felony.  (§ 1192.7, subd. (c)(31).)  The fact that additional enhancement allegations were later stricken at the original sentencing does not change the character of the offense that defendant admitted.

*Thoma* presented the issue of whether a conviction for driving under the influence causing bodily injury constituted a strike.  (*Thoma* [, 58 Cal. App. 4th at 1099]).  The offense constitutes a strike prior if the defendant personally inflicted great bodily injury (§ 1192.7, subd. (c)(8)).  (*Thoma,* at p. 1100.)  The *Thoma* court concluded that insufficient evidence supported the strike prior finding because an adoptive admission made after the entry of the plea did not serve to establish the nature of the admitted offense.  (*Id.* at p. 1102.)  The appellate court also rejected hearsay evidence as

-17-

insufficient to establish the serious nature of a felony conviction. (*Id.* at p. 1104)  The present case does not involve proof based on a post-plea adoptive admission or by hearsay testimony.

The record establishes that, in 1979, defendant admitted he assaulted the victim with a knife.  Consequently, proof of his plea to assault with a deadly weapon sufficed to establish the conviction as a serious felony.  (§ 1192.7, subd. (c)(31).)

C.

*1993 Spousal Abuse Conviction*

The People introduced another packet of certified documents from defendant's 1993 conviction for felony spousal abuse (§ 273.5) and assault with a deadly weapon (§ 245, subd. (a)(1)) to prove that he had a prior strike.

The packet of documents contains verdict forms showing that the jury convicted defendant of felony spousal abuse and found that he personally used a deadly or dangerous weapon (§ 12022, subd. (b)).  The jury also convicted defendant of assault with a deadly weapon or instrument or by force likely to produce great bodily injury (§ 245, subd. (a)(1)).

In 1993, the sentencing court stated: "I am inclined to sentence the defendant and fix the base term based on . . . spousal abuse, because I consider that to be the accurate and essential crime that he has committed—I would certainly sentence him to the high term on [that] count, and I would certainly impose the use of the weapon."  With respect to the assault offense, the court stated: "[For] the assault with a deadly weapon, I will stay the imposition of judgment and sentence pursuant to . . . section 654 since the same act, same immediate course of conduct that is the basis of the spousal abuse is in fact the basis of the assault with a deadly weapon."

In the current case, the People argued the evidence was sufficient to support a finding that the spousal abuse conviction was a strike because a weapon use enhancement attached.  The trial court in this case concluded that the 1993 assault conviction constituted a strike.

On review, we agree with the trial court that the 1993 conviction for felony spousal abuse with personal use of a deadly or dangerous weapon is a serious felony.  (§ 1192.7, subd. (c)(23).

"[A]ny felony in which the defendant personally used a dangerous or deadly weapon" is a serious felony.  (§ 1192.7, subd. (c)(23).)   Defendant's personal use of a deadly weapon in the commission of spousal abuse was established by the prior jury's finding that defendant personally used a deadly or dangerous weapon within the meaning of former section 12022, subdivision (b).[7]  Section 12022, subdivision (b), has been construed to refer to the use of "instrumentalities that are weapons in the strict sense, such as guns and blackjacks; and instrumentalities which may be used as weapons but which have nondangerous uses, such as hammers and pocket knives." (*People v. Burton* [, 49 Cal. Rptr. 3d 334, 341 (Cal. Ct. App. 2006)]).  Thus, defendant was found to have personally used a deadly weapon in the commission of his offense so that it constituted a serious felony.

-18-

FN. 7:  In 1993, section 12022, subdivision (b), provided: "Any person who personally uses a deadly or dangerous weapon in the commission or attempted commission of a felony shall, upon conviction of such felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of one year, unless use of a deadly or dangerous weapon is an element of the offense of which he or she was convicted."  (Stats. 1989, ch. 1284, § 2, pp. 5058–5059.)

In arguing against this conclusion, defendant relies on *People v. Aguilar* [, 945 P.2d 1204, 16 Cal. 4th 1023 (Cal. 1997)].  *Aguilar* is inapposite because it holds only that hands and feet are not deadly weapons for purposes of the assault "with a deadly weapon" as defined by section 245.  (*Aguilar, supra,* at pp. 1028-1030, 1034.)  Nothing in his case suggests defendant should receive the benefit of the holding in *Aguilar* because he used only his hands or feet in committing the felony spousal abuse. Accordingly, the trial court did not err in concluding the spousal abuse conviction was a prior strike.

## D.
### *1993 Assault with a Deadly Weapon Conviction*

The documents in support of the 1993 assault with a deadly weapon conviction reveal a difference between the verdict form and the abstract of judgment.  Specifically, the verdict form notes that the jury found defendant guilty of "assault with deadly weapon or instrument *or by force likely to produce great bodily injury.*"  (Italics added.) By contrast, the abstract of judgment indicates that defendant was convicted of "ADW," which indicates assault with a deadly weapon.  Defendant contends the difference between the documents means that it is impossible to tell whether he was convicted of section 245, subdivision (a)(1), for assault with a deadly weapon or by means likely to result in great bodily injury.

If the defendant committed the offense with a deadly weapon, it was a strike. However, if the assault was committed by means of force likely to result in great bodily injury, the trial court in this case would have erred in concluding it constituted a serious felony for sentence enhancement purposes.  As our high court has explained, "'assault with a deadly weapon' is a serious felony.  (§ 1192.7, subd. (c)(31).)  On the other hand, while serious felonies include all those 'in which the defendant *personally inflicts* great bodily injury on any person' (*id.,* subd. (c)(8), italics added), *assault merely by means likely to produce GBI, without the additional element of personal infliction, is not included in the list of serious felonies.*  Hence, . . . a conviction under the deadly weapon prong of section 245(a)(1) is a serious felony, but a conviction under the GBI prong is not."  (*Delgado* [, 183 P.2d at 1231 (italics changed]).

We conclude that the conflict was resolved by the trial court in 1993 when it determined that sentence for the assault with a deadly weapon should be stayed because it was "the same act, same immediate course of conduct," as the spousal abuse conviction.

Thus, the court found that the offense was actually an assault with a deadly weapon *and* by means of force likely to produce great bodily injury.

The original sentencing court would have erred in applying section 654 if the convictions had not resulted from the same act.  Being the same act, the findings for the spousal abuse conviction supplied the necessary means to render the assault with a deadly weapon a strike as well.  In so concluding, we reject defendant's contention that section 654 might have applied even if the spousal abuse and assault were committed one after another—and therefore, perhaps, by different means.  Here, the record made by the 1993 sentencing court clearly indicates that both convictions arose out of the "same immediate course of conduct."  Thus, we find sufficient evidence supports the trial court's finding that defendant's 1993 conviction for assault with a deadly weapon was a serious felony.  (§ 1192.7, subd. (c)(31).)

The trial court in the present case did not err in finding that defendant sustained three prior serious felony convictions.

*Hackett*, 2012 WL 884374, at *7-11.

Whether a crime qualifies as a "serious felony" under California's sentence enhancement provisions is a question of state sentencing law, and federal habeas relief is unavailable for alleged error in the interpretation or application of state law.  *Miller v. Vasquez*, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (concluding that it "need not address" on habeas review petitioner's claim that his prior conviction constituted a "serious felony" for purposes of sentencing enhancement because "[w]hether assault with a deadly weapon qualifies as a 'serious felony' under California's sentence enhancement provisions is a question of state sentencing law").  Hackett's contention regarding his prior strike convictions is exclusively concerned with state law and therefore not cognizable in a federal habeas corpus proceeding.  Hackett is not entitled to relief on this claim.

## V. CONCLUSION

Hackett is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

-20-

      **IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

      The Clerk of the Court is to enter judgment accordingly.

      Dated: January 27, 2014.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge
